IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **06-cv-02262-JLK** (consolidated with Civil Action No. 07-cv-2063-JLK)

**RENEE ATWELL,**
**VIVIAN BRADLEY,**
**TERRY LEE, and**
**YVETTE MARTINEZ HOCHBERG,**

      Plaintiffs,

v.

**PATRICIA GABOW, in her individual and official capacity as Chief Executive Officer and Medical Director of Denver Health and Hospital Authority, and**

**DENVER HEALTH AND HOSPITAL AUTHORITY,**

      Defendants.

---

Civil Action No. **07-cv-2063-JLK**

**ODIN GOMEZ,**
**MEKELA RIDGEWAY,**
**CATHIE GORDON, and**
**KATIE MOORE,**

      Plaintiffs,

v.

**PATRICIA GABOW, in her individual capacity and in her official capacity as Chief Executive Officer and Medical Director of Denver Health and Hospital Authority,**

**GREG ROSSMAN, in his individual capacity and in his official capacity as Chief Human Resources Officer of Denver Health and Hospital Authority,**

**WENDY ALEXANDER, in her individual capacity and in her official capacity as Human Resources Director of Denver Health and Hospital Authority, and**

**DENVER HEALTH AND HOSPITAL AUTHORITY,**

      Defendants.

# ORDER DENYING MOTION FOR CLASS CERTIFICATION

Kane, J.

These consolidated putative employment discrimination class actions are before me on Plaintiffs' Motion for Class Certification (Doc. 58). Representative Plaintiffs relate individual instances of alleged race-based discrimination in their employment at Denver Health and Hospital Authority, contend this discriminatory treatment was the result of an overall policy of discrimination against non-white employees, and seek certification as representatives of a single class of all non-white current and former Denver Health employees who have suffered similar discriminatory treatment since 2003.[1] Plaintiffs each claim to have suffered specific injuries resulting from Defendants' adverse employment actions, including lost wages and benefits, damage to reputation, and emotional distress. For their relief, Plaintiffs seek compensatory, punitive and "liquidated" damages, statutory penalties, back pay, "instatement" or reinstatement to jobs they or individual class members would have held but for Defendants' discriminatory actions (or, in lieu of reinstatement, awards of front pay and benefits), as well as generalized prohibitory and mandatory injunctive relief.

Plaintiffs' Motion, as stated, fails to satisfy the prerequisites for the maintenance of Plaintiffs' claims as a class action under Rule 23(a), Fed. R. Civ. P. Among other deficits, Plaintiffs' assertion that allegations of an overarching "policy" of discrimination at Denver Health

---

[1] Specifically, Plaintiffs seek certification of a class of current and former non-white Denver Health employees who, "since February 13, 2003, [have] been denied a job, denied rights or benefits of a job, or who have been terminated from a job at Denver Health and Hospital Authority on the basis of race, color and/or ethnic group or in retaliation for complaining about employment discrimination based upon race, color and/or ethnic group." Mot. at 2.

renders their claims "typical" of the class's has been rejected by the United States Supreme Court. Conceptually, the Court stated in *General Telephone Co. v. Falcon*, 457 U.S. 147, 157 (1982), there is a "wide gap" between an individual's claim, on the one hand, that he was denied promotion or retaliated against on discriminatory grounds and an otherwise unsupported allegation that the company has a policy of discrimination, and the existence, on the other, of a class of persons who have suffered the same injury as that individual. Plaintiffs have failed to bridge that gap in their Motion.

Even assuming, for the sake of argument, that Plaintiffs could establish the numerosity, commonality, typicality, and adequacy of representation prerequisites for maintaining their claims as a class action, no grounds would exist for certification under Rule 23(b)(2) or (b)(3). At best, these cases may be viewed as "hybrid" actions in which Plaintiffs seek both injunctive relief and money damages on behalf of the class. As such, they may be certified as a class action under Rule 23(b)(2) only if (1) appropriate final injunctive or declaratory relief is actually being sought and (2) only then if the monetary award sought is but "incidental" to that relief. *See generally* 7AA Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d, § 1784.1 at 347-55. The relief sought in this case fails on both counts.

That leaves Plaintiffs exclusively with the assertion that among this large group of individual discrimination claims – in which class members' specific requests for compensatory damages, back pay and reinstatement/instatement or front pay must be individually considered – common questions of law and fact so "predominate" that they are best maintained as a class action under Rule 23(b)(3). There is no basis in reason or in fact for the assertion, particularly where, as here, the individual claims of all eight representative Plaintiffs have already been

consolidated for purposes of discovery and where allowing Plaintiffs to pursue the discrimination claims of others in a representative capacity ignores the individual nature of those claims and undercuts the procedural safeguards otherwise available them and to Defendants were they asserted on an individual basis.

For the foregoing reasons, as set forth more fully below, the Motion for Certification as a Single Class Action (Doc. 58) is DENIED.

## I. BACKGROUND AND PROCEDURAL HISTORY.

Before addressing the merits of Plaintiffs' request, I summarize the procedural history of these actions as follows:

This litigation began as an individual employment discrimination action brought by a single individual, Patricia Atwell, against Denver Health and Hospital Authority ("Denver Health" or "DH") and DH Chief Executive Officer Patricia Gabow. *See* Compl. (Doc. 1), 06-cv-2262-JLK (filed November 13, 2006). In her original Complaint, Atwell claimed she had been retaliated against and constructively discharged on the basis of her race after she complained about losing her office and being moved to a cubicle during her convalescence from carpal tunnel surgery. Atwell asserted claims under Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983, seeking a declaration that her rights had been violated as well as an award of back pay, benefits, and compensatory and punitive damages.

Defendants moved to dismiss (Doc. 5), asserting Atwell's allegations failed on numerous grounds to state viable claims under Title VII or §§ 1981 or 1983. I set a briefing schedule, giving Atwell nearly three weeks to respond to Defendants' Motion. (Doc. 6.) Atwell waited until the final day of her briefing period to file her Response (Doc. 9), which, it turned out, did not

respond substantively to Defendants' arguments but instead expressed a desire to amend her Complaint "to address all of the issues Defendants raise in their motion to dismiss." *Id.* at p. 1. Specifically, Atwell stated her intent to seek to amend her Complaint to "make it clear" that (1) she was not bringing a Title VII claim against Gabow; (2) that her § 1983 claim was indeed directed to Denver Health as a political subdivision of the state of Colorado; and (3) that her complaints of racial discrimination actually preceded Defendants' actions in removing her from her office. *Id.* at 1-2.

The Amended Complaint actually filed, however, had little to do with clarifying Ms. Atwell's claim and was instead a dramatically changed document purporting to assert individual claims for discriminatory treatment on behalf of "all past and present non-white DH employees who have been or continue to be discriminated against on the basis of their race, color and/or ethnic group in the terms and/or conditions of their employment, including, but not limited to, training, promotion retention, assignment of duties, granting of rights and benefits, or any other personnel action." Am. Compl. (Doc. 13). The Amended Complaint alleged all non-white employees suffer from a "policy, practice, custom, or usage" of discrimination at Denver Health Plaintiffs call "right person on the bus." Specifically, the Amended Complaint alleged Denver Health used its facially neutral "Talent Plus" personnel policy to select and reward white employees and to discriminate against non-white employees. By adding three new Plaintiffs to the mix, moreover, the Amended Complaint achieved an end-run around Defendants' original Motion to Dismiss, which, even if granted, would no longer be dispositive of the action.

Accordingly, Defendants filed a second Motion to Dismiss (Doc. 17), again urging the numerous grounds on which Atwell's claims failed under Rule 12(b)(1) and (b)(6) standards, and

5

provided additional grounds for dismissing the claims of the new representative Plaintiffs as well as any claims brought on behalf of the putative class. I set the Motion for oral argument, expressing dismay at the tactics of Plaintiffs' counsel and identifying several substantive issues I wanted counsel for both sides to address. *See* Order (Doc. 22)(ordering counsel to address the legal and factual bases for turning Atwell's original claims into a class action, the legal and factual bases for the claims in the First Amended Complaint; and ordering counsel to "certify the steps undertaken to investigate and research [these matters] for Rule 11 purposes"). At oral argument, Plaintiffs' counsel notified me of a lengthy brief (Doc. 23) which had been filed on the court's electronic filing system shortly after midnight that morning and which neither Defendants nor I had had a chance to review. Rather than striking Plaintiffs' brief, I continued the hearing, gave Defendants an opportunity to respond to Plaintiffs' brief and gave Plaintiffs' counsel additional time to submit materials and verifications concerning their Rule 11 compliance. *See* Minutes (Doc. 24) and Tr. of Hg. (Doc. 25).

Two of the attachments to Plaintiffs' midnight filing on the day of the hearing on Defendants' renewed Motion to Dismiss were the EEOC complaints of Mekela Ridgeway and Odin Gomez. (Doc. 23, Exs. 2, 3.) While Defendants' Motion was pending, and in the midst of proceedings initiated by Plaintiffs for my recusal (Doc. 32), Plaintiffs apparently turned their attention to state court, filing a duplicative class action against Denver Health in Denver District Court, naming Gomez, Ridgeway and three others as representative class Plaintiffs.[2] Defendants removed that Amended Complaint, *Gomez et al. v. Gabow et al.*, to federal court, where it was

---

[2] Counsel amended the *Gomez* Complaint shortly thereafter to remove one of the originally named Plaintiffs in that case.

designated Civil Action No. 07-cv-2063, randomly assigned to Judge Krieger, who transferred the case to me based on its relatedness to *Atwell*. With the parties' consent and on Defendants' Motion, I consolidated the actions, naming *Atwell* as lead. (Doc. 43.)

Defendants have moved to dismiss each of the remaining four *Gomez* class Plaintiffs' claims (Doc. 45) on substantively similar grounds as the Motion still pending to dismiss the *Atwell* Plaintiffs' claims. Both motions were fully briefed in December 2007. Concerned the class action allegations were clouding the issues raised in the Motions to Dismiss, I notified the parties of my intent to address the class certification issue first. Plaintiffs responded by moving formally to certify the *Atwell* and *Gomez* cases as a single class action under Fed. R. Civ. P. 23(b)(2) or, alternatively, under Rule 23(b)(3) (Doc. 58), and it is that Motion which is now before me.

I have reviewed the Motion together with the attendant briefs, supplemental briefs, submissions of both sides, the record, and applicable authority. I conclude oral argument would not assist me in my determination and rule on the briefs as follows.

## II. DISCUSSION.

Rule 23(c) of the Federal Rules of Civil Procedure provides that, when a person sues or is sued as a representative of a class, the court must – at an early practicable time – determine by order whether to certify the action as a class action.

*Initial Prerequisites for Maintaining Class Action – Rule 23(a).*

Rule 23(a) regarding the initial prerequisites for maintaining a class action provides that

> One or more members of a class may sue or be sued as representative parties on behalf of all *only* if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

7

(Emphasis mine.)

Plaintiffs' allegations and affidavits not only fail under the most liberal of pleading standards to establish the prerequisites of numerosity and typicality, they actually establish the converse. For example, Plaintiffs support assertions that there are "50 to 250" individuals falling within the class of persons who, since 2003, have been retaliated against, denied a job, denied the rights or benefits of a job, or terminated from a job at Denver Health on the basis of race or ethnicity, with the affidavit of Plaintiff Gomez who states he has "heard" as much and the affidavit of Plaintiff's counsel, Anne Sulton, simply asserting the same as fact. Nowhere in the myriad submissions of counsel – filed under seal and otherwise – are there any facts to support the assertion. In fact, the submissions demonstrate no more than a handful of other contacts were ever made or received by counsel (and this, despite the casting by counsel of a wide net) and that of those, any individual arguably falling within the class had, in fact, either joined *Atwell* or *Gomez* as a named Plaintiff.

With regard to "commonality," it is important to consider the actual facts alleged by the representative Plaintiffs. In the *Atwell* action, for example, African-American psychologist Patricia Atwell claims she was discriminated and retaliated against on the basis of her race after complaining about being moved from an office to a cubicle while she was out for an extended period after carpal tunnel surgery. Am. Comp. (Doc. 10) ¶¶ 39-45. Vivian Bradley, a physician's assistant who was also African-American, claims she was discriminated against on the basis of race when she was terminated for abandoning her job after her car broke down and she was unable to report to work. *Id.* ¶¶ 68-79. Registered Nurse Terry Lee claims she was disciplined on the basis of her race for breaching patient confidentiality when she accessed and reviewed her own

8

child's medical records while at work. *Id.* ¶¶ 80-95. Dr. Yvette Martinez Hochberg claims she was discriminated against both as a Latina and a member of the Jewish faith, based on unwelcome comments regarding her background and a transfer to a different Denver Health clinic she considered a demotion. *Id.* ¶¶ 98-109.[3] Given the unique and subjective injuries each claims to have suffered as a result of his or her individual experiences, "commonality" is not as clear cut as Plaintiffs contend.

With regard to "typicality," moreover, Plaintiffs simply assert that the existence of a "policy, practice or custom" of racial discrimination constitutes a "common" harm linking their claims to the class's claims, and then, because the commonality and typicality requirements "tend to merge" in Rule 23(a) determinations, conclude "typicality" exists. Mot. (Doc. 58) at 14-15 (citing *Falcon*, 457 U.S. at 159, n13). While Plaintiffs cite *Falcon* as support for their assertion that no separate showing of "typicality" is necessary in this case, *Falcon*, in fact, holds the opposite.

In *Falcon*, a Mexican-American employee of defendant, who had been passed over for promotion, brought a Title VII action alleging defendant maintained a "'policy, practice, custom, or usage of: (a) discriminating against [Mexican-Americans] because of national origin with respect to compensation, terms, conditions, and privileges of employment, and (b) . . . subjecting [Mexican-Americans] to continuous employment discrimination.'" 457 U.S. at 150. According to Falcon, this policy resulted in "whites with less qualification and experience and lower evaluation scores than [he] [being] promoted more rapidly." *Id.* Falcon asserted a claim for

---

[3] The putative class representative Plaintiffs' allegations in 07-cv-2063 are similarly *sui generis*.

9

discriminatory treatment based on defendant's failure to promote him and purported to bring that claim on his own behalf as well as "on behalf of other persons similarly situated . . . who have been and who continue to be or might be adversely affected by the practices complained of herein." *Id.* at 150-51. In that portion of his complaint in which Falcon alleged conformance with Rule 23(a), he stated (1) "common questions of law and fact affecting the rights of the members of this class who are, and who continue to be . . . discriminated against in ways . . . [that] adversely affect their status as employees," (2) "[t]hese persons are so numerous that joinder of all members is impracticable," (3) "common relief" was sought such that plaintiff's claims were typical of the class's, and (4) plaintiff would and could "adequately represent" the class. *Id.* at 151.

The Supreme Court held it was error for the district court to certify a class based on the allegations in Falcon's complaint, and in particular rejected Falcon's assertion that "typicality" is satisfied by allegations that defendant's discriminatory treatment of him was pursuant to a "policy, practice or custom" of discrimination against all members of his same protected class. "[W]hile we cannot disagree" with the generalized proposition that "racial discrimination is, by definition, class discrimination," Justice Stevens wrote, "the allegation that such discrimination has occurred *neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified.*" 457 U.S. at 157 (emphasis mine).

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Id.* For a plaintiff to bridge that gap, he must allege facts not only establishing the validity of his

own claim, but also facts sufficient to justify the *additional* inference of a class-wide policy of discrimination. *Id.* The conclusory assertion that defendant "has" such a policy is insufficient to turn an individual claim for discriminatory treatment into a class action on behalf of all individuals in plaintiff's same minority group.

> If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack [by all members of the protected class], every Title VII case would be a potential companywide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class-action litigation.

*Id.* at 158-59.

Precisely so here: Plaintiffs assert individual claims of discriminatory treatment and contend this treatment is the result of a class-wide policy of discrimination against non-whites. While Plaintiffs are sure to insist their allegations regarding "right person on the bus" distinguish their cases from *Falcon*,[4] the fundamental similarity is that Plaintiffs' allegations still fall short of raising the additional inferences necessary to establish that Denver Health's implementation of "Talent Plus" or "right person on the bus" constitutes an actual *policy* of discrimination for Title VII purposes.

In this regard I note Plaintiffs' "policy, custom or practice" allegations are largely focused on the jurisdictional prerequisites for holding an entity liable as a "person" under 42 U.S.C. § 1983. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-91 (1978) *and*

---

[4] It is true Plaintiffs' "policy, practice and custom" allegations are more specific than Falcon's. Plaintiffs allege white managers and supervisors are trained by Denver Health to "ignore objective performance criteria and to look for the 'right person in the right seat on the bus' and to 'put off the bus' those persons subjective criteria suggest are not compatible," and assert this "right person" policy has been used on at least one occasion as "a basis for terminating an otherwise fully qualified non-white highly skilled professional health care provider." Am. Compl., 06-cv-2622, at ¶ 11. The distinction is one of style, not substance.

11

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 122-23, 127 (1988)(local governmental entities are "persons" against whom liability can be asserted under § 1983, but may be called to task only for their own "policies" or firmly entrenched "customs" or practices that violate the constitution, not for the unconstitutional acts of their individual employees). Nevertheless, *Falcon* stands for the proposition that individual instances of discriminatory treatment, together with the *assertion* that such treatment is the result of an affirmative "policy" of discrimination, are insufficient to secure certification of a class of individual's sharing plaintiff's protected status. In the instant case, where the discriminatory nature of the policy alleged is the way it is used to benefit whites and harm non-whites, the inference necessary to meet the *Falcon* standard is the existence of true disparate impact as set forth in *Thomas v. Metroflight, Inc.*, 814 F.2d 1506, 1509-10 (10th Cir. 1987).[5] The allegation that Defendants' "right person" policy was used in one instance to terminate one qualified non-white health care provider falls far short of the allegations necessary to support an inference that a discriminatory policy or practice existed at Denver Health which impacted Plaintiffs and class members in a common way.

Because the Amended Complaints in these consolidated actions provide an insufficient basis to support a conclusion that Plaintiffs' individual discriminatory treatment claims are

---

[5] As the Tenth Circuit explained in *Thomas*, under appropriate circumstances an employer's use of a facially neutral employment policy in a manner that disproportionately impacts members of a protected class gives rise to an inference of invidious discrimination against that class for Title VII purposes. *See Thomas v. Metroflight, Inc.*, 814 F.2d 1506, 1509-10 (10th Cir. 1987)(gender discrimination based on facially neutral anti-nepotism policy)(citing *Dothard v. Rawlinson*, 433 U.S. 321 (1977)). An inference of discrimination depends on the assertion of facts tending to show the "facially neutral standards in question selects applicants for hire in a significantly discriminatory pattern." *Id.* at 1509 (quoting *Dothard* at 329). While there are disagreements as to level of disproportionality necessary to establish a "significantly" discriminatory pattern, the Tenth Circuit in *Thomas* held application of an anti-nepotism rule in two instances to impact two women insufficient to prove violation of Title VII. *Id.* (discussing cases).

common to and typical of the purported claims of the class, Plaintiffs' have failed to demonstrate the prerequisites for maintaining their claims as a class action under Rule 23(a). Even assuming Plaintiffs could meet Rule 23(a)'s requirements (such as by alleging an appropriate disparate impact claim on behalf of themselves and the class), however, class certification would still be unavailable to them under either Rule 23(b)(2) or 23(b)(3).

*Rule 23(b)(2).*

Rule 23(b)(2) provides for the maintenance of multi-party claims as class actions "if the prerequisites of subdivision (a) are satisfied and in addition . . . . the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The subdivision was added to Rule 23 in 1966 in part to make clear that civil-rights suits for injunctive or declaratory relief can be brought as class actions. *See* Wright, Miller & Kane, *supra* at § 1776. The suit must be primarily one for equitable relief, however, and while the certification of mixed or "hybrid" suits seeking both injunctive and monetary relief is not prohibited under the rule, certification is appropriate only if the final injunctive relief is found to be appropriate with respect to the class as a whole *and* the request for monetary relief is merely "incidental" to that relief. *See id.*, § 1775, p. 61 *ff.*, § 1784.1, p. 348 *ff.* (both sections collecting cases).[6] Subsection

---

[6] Typically money-damage class actions fall under Rule 23(b)(3), which imposes additional notice requirements and opt-out rights under Subdivision (c)(2)(B) for class members. A determination that a hybrid action may be certified solely under Rule 23(b)(2) therefore has important consequences for the putative class, the defendant and the court charged ultimately with liquidating those monetary claims. The question in a hybrid case is whether certification under 23(b)(2) ignores the individual nature of the class members' monetary interests and thereby undercuts the procedural safeguards that those members would have been accorded had the suit been brought solely to pursue those interests. *See* Wright & Miller, *supra* § 1784.1.

23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23 Advisory Committee Notes; *see Nicodemus v. Union Pacific Corp.*, 204 F.R.D. 479, 491-92 (D. Wyo. 2001), *aff'd on other grounds*, 318 F.3d 1231 (10th Cir. 2003).

While Plaintiffs contend the "main goal" of their action is injunctive relief, Mot. (Doc. 58) at 3, the assertion is contrived and contrary to the lion's share of the allegations in their class action complaints. Plaintiffs, in their Amended Complaints, seek to hold Defendants liable, "jointly and severally," for all damages resulting from their discriminatory actions, specifically including "damage to [their individual] reputation[s], anxiety, personal indignity, humiliation, embarrassment, emotional distress, and lost wages and benefits." *See Atwell* Compl. ¶¶ 67 (Atwell), 79 (Bradley), 97 (Lee), 109 (Hochberg); *Gomez* Compl. ¶¶ 47 (Gomez), 62 (Ridgeway), 69 (Gordon), and 80 (Moore). Plaintiffs seek pre- and post-judgment interest on those monetary damages, as well as "punitive" and "liquidated" damages, and "other statutory penalties." *See id.* In their Motion for Class Certification, however, Plaintiffs ignore the monetary nature of their claims and instead emphasize their requests for back pay, reinstatement and declaratory and injunctive relief, even suggesting requests for back pay and punitive damages are not really "monetary" claims at all.[7]

---

[7] Plaintiffs cite no authority for the latter proposition and cite *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148 (9th Cir. 1999) and *Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997) for the assertion that back pay is an appropriate form relief awardable on a class-wide basis under Rule 26(b)(2). Neither *Gotthardt* or *Eubanks* supports Plaintiffs' assertion. *Gotthardt* was an individual Title VII action brought by a female train engineer against her employer, it was not a class action and it involved no analysis, whatever, of the standards for class certification under Rule 23(b)(2). *Eubanks*, which was a class action, not only fails to support Plaintiffs' position but stands for precisely the opposite. In *Eubanks*, the court of appeals recognized that "back pay" was sometimes characterized as a form of "equitable" relief in employment cases, but ***rejected*** the

14

Plaintiffs' requests for declaratory and injunctive relief in their Complaints seek an order declaring Defendants' actions "unlawful"; prohibiting Defendants' from "violating" federal anti-discrimination laws and from engaging in "unlawful" or discriminatory practices; mandating the establishment of a "monitoring" system ensure Defendants "comply" with these orders; and a request that Plaintiffs' personnel files be purged of written disciplinary actions. Atwell Am. Compl. at pp. 28-29, Gomez Am. Compl ("Relief Requested"). Such relief will not support certification under 23(b)(2). *See Monreal v. Figueroa*, 367 F.3d 1224, 1234-36 (10th Cir. 2004)(appropriate injunctive relief must be "specific in terms" and describe in reasonable detail the act or acts sought to be restrained, Fed. R. Civ. P. 65(d), and injunctions simply requiring defendant to obey the law and prohibiting defendant from violating it are impermissible), *applied in Britton v. Car Toys, Inc.*, 2006 WL 3487686 * 10 (D. Colo. 2006)(Daniel, J.)(injunctive relief to require defendants to "cease all illegal discrimination against and sexual harassment of its female employees, all retaliation against any of its employees, and to institute and enforce policies preventing such illegal harassment in the future" inadequate for certification under Rule 23(b)(2)). The relief sought by Plaintiffs in this case runs afoul of the requirements for injunctive relief in Fed. R. Civ. P. 65(d) and will not support certification under rule 23(b)(2) under *Monreal*.

Even if Plaintiffs were to fashion a request for specific prospective injunctive relief in conformance with Rule 65, moreover, the resulting "hybrid" action would not be certifiable as a

---

proposition that this made it an appropriate remedy awardable in a class action certified under Rule 23(b)(2). 110 F.3d at 95 (allowing back pay as an element of recovery generalizeable to a class may lead to divergences of interest that make unitary representation of a class problematic). Plaintiffs' attempt to recharacterize their requests for monetary claims as claims for "injunctive" or "equitable" relief appropriate for certification under 23(b)(2) is unpersuasive.

15

class action under Rule 23(b)(2) unless Plaintiffs' claims for monetary relief were withdrawn or amended in a manner rendering it "incidental to" the request for injunctive relief. *See* Wright, Miller & Kane, *supra* § 1784.1. Two tests have been developed for determining whether monetary relief requested in class claims are incidental to injunctive relief. The first, adopted by the Fifth Circuit in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411-118 (5th Cir. 1998), was used by Judge Johnson in *Nicodemus* and holds damages are "incidental" to injunctive relief for purposes of Rule 23(b)(2) certification if they flow to the class as a whole from the order for injunctive relief itself. 204 F.R.D. at 492. If they rely on subjective differences between class members, or require the court to make individualized inquiries as to damages, they are not "incidental." *Id.* The second, used by the Second Circuit in *Robinson v. Metro-North Commuter RR Co.*, 267 F.3d 147 (2d Cir. 2001), focuses on the injunctive or declaratory portion of the remedy sought. In *Robinson*, a Title VII action alleging the defendant employer had engaged in a pattern-or-practice of disparate treatment based on race with regard to promotion and discipline, the court held (b)(2) certification of hybrid actions may be appropriate if the injunctive relief were found to be "predominant." *Id.* at 164. Under this test, district courts should consider whether (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought, and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were plaintiffs to succeed on the merits. *Id.* "Insignificant" or "sham" requests for injunctive relief "should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery. *Id.*

That the Tenth Circuit has not specifically endorsed one or the other of these approaches to (b)(2) certification in "hybrid" actions is of no consequence here, because the relief sought by

Plaintiffs in the instant actions fails under either standard. Applying *Allison*, Plaintiffs' requests for monetary relief do not flow from the injunctive relief sought and would require individual scrutiny of class members' "damage to reputation, anxiety, personal indignity, humiliation, embarrassment, emotional distress, lost wages and benefits." Applying *Robinson*, Plaintiffs' requests for injunctive relief – like the relief sought in *Monreal* – are but vague incantations to "stop behaving unlawfully" and "start behaving lawfully" that are, if anything, "incidental to" the damages claims.

*Predominance under Rule 23(b)(3).*

Alternatively, Plaintiffs seek certification under Rule 23(b)(3) claiming "common questions" of law and fact "predominate" over questions affecting only individual members such that a class action is "superior" to other available methods for the fair and efficient adjudication of the controversy. I reject both contentions.

The commonality requirement under Rule 23(a) is much less demanding than the predominance requirement of Rule 23(b)(3). *See Monreal*, 367 F.3d at 1237. Plaintiffs' contention that the former establishes the latter is incorrect. The contention that common questions between the representatives' claims and those of the class "predominate" also fails on its merits, moreover, for the same reasons Plaintiffs' assertions of "typicality" failed above. Absent allegations sufficient to establish Defendants' maintained an actual class-wide "policy" of discrimination, Plaintiffs' claims cannot be said to be the same as those of the putative class.

Finally, Plaintiffs argue maintaining their claims as a class action is "superior" to their maintaining them individually because the potential recovery amount available to class members is "not large enough" to justify the expenditures of time and money to pursue their claims on an

17

individual basis. Mot. Class Certification at 20. Requiring current and former minority employees of Denver Health to maintain their disparate treatment claims individually would, according to Plaintiffs, effectively "deny[] them access to our courts as an avenue of redress." *Id.* For those (like the eight Plaintiffs already named in these actions) able to "muster the resources," Plaintiffs continue, the "separate lawsuits" that would ensue "would require analysis of the same evidence by a number of different judges and juries." These assertions are without merit. The individual claims of the eight named Plaintiffs are already being pursued in a single, consolidated action and any "common" questions of fact and law will be developed in that one action in front of one judge and one jury. All of the potential procedural and efficiency benefits of class certification have already been secured by the consolidation of these actions.

As I have previously noted, this case has shifted dramatically from an employment discrimination action brought on behalf of a single African American psychologist who claimed the retaliation she suffered after she complained about being removed from her office and being supervised by a lesser-qualified nonminority employee was based on her race into first one, and then two, separate class actions brought in state and in federal courts seeking primarily monetary relief on behalf of *all* current and former non-white employees who have worked for Denver Health since 2003 and have suffered adverse employment action. Plaintiffs cannot cast about so broadly without establishing an actual, viable connection between their individual claims and the claims of this wide-sweeping class.

### III. CONCLUSION.

There is no basis under any view of the facts alleged or evidence promised, for certifying these eight Plaintiffs' individual claims for disparate treatment into a single class action on behalf

18

of "50-250" current and former DH employees who are alleged to have suffered similar claims. Plaintiffs have not only failed to establish either the numerosity or typicality prerequisites for maintaining their action as a class action, they have also failed to demonstrate how certification will achieve any of the purposes of Rule 23(b). Plaintiffs' claims are individual claims of disparate treatment not generalizeable to the class seeking compensatory and remedial equitable relief unique to them and not generalizeable to the class. To the extent Plaintiffs seek a declaration that Defendants' discriminatory actions are "unlawful" and an injunction prohibiting Defendants "from engaging in [these] unlawful [actions]," such relief flows axiomatically from any findings in favor of any of the named Plaintiffs and is inappropriate for certification under Rule 23(b)(2) as a matter of law.

Plaintiffs assertions to the contrary notwithstanding, the fact formal discovery has yet to commence does not alter this conclusion, as I have assumed all well-pleaded, specific, factual allegations as true for purposes of this motion. However, should some or all of the individual Plaintiffs' claims survive the pending Motions to Dismiss and should discovery yield facts that would support class certification under Rule 23(b)(2) or (b)(3), I may revisit the issue in accordance with Rule 23(c)(1)(C). At this stage of the proceedings, however, the request for class certification stands fully developed on the briefs and is DENIED.

I defer the question of whether Plaintiffs' counsel should be sanctioned under Fed. R. Civ. P. 11 for asserting the class claims until after my ruling on Defendants' pending Motions to Dismiss 06-cv-2262 and 07-cv-2063 under *Bell Atlantic v. Twombly* and related authority.

Dated February 28, 2008.                    **s/John L. Kane**
                                            SENIOR U.S. DISTRICT JUDGE